603 So.2d 854 (1992)
MISSISSIPPI STATE DEPARTMENT OF HEALTH
v.
GOLDEN TRIANGLE REGIONAL MEDICAL CENTER.
No. 89-CC-0937.
Supreme Court of Mississippi.
June 24, 1992.
Michael C. Moore, Atty. Gen., Arthur C. Sharpe, Jr., Stephanie L. Ganucheau, Sp. Asst Attys. Gen., Jackson, for appellant.
Barry K. Cockrell, Richard G. Cowart, Watkins Ludlam & Stennis, Jackson, Aubrey E. Nichols, Gholson Hicks & Nichols, Columbus, for appellee.
En Banc.
HAWKINS, Presiding Justice, for the Court:
Mississippi State Department of Health (MSDH) appeals an order of the Chancery Court of Lowndes County reversing MSDH's denial of the application of Golden Triangle Regional Medical Center (Golden Triangle) for a certificate of need to establish cardiac catheterization services at its facility in Columbus. The Chancellor erred in holding that MSDH's decision denying the certificate of need was arbitrary and capricious, and we reverse and render.

FACTS
Under Mississippi law health care providers must obtain a certificate of need (CON) prior to offering certain new health services. Miss. Code Ann. § 41-7-171 et seq. (Supp. 1989) A CON application must "substantially *855 comply" with the projection of need reported in the State Health Plan in effect at the time the application is submitted. Miss. Code Ann. § 41-7-193(1) (Supp. 1989). Golden Triangle's application for a certificate of need was submitted under the 1986 State Health Plan. This plan sets out certain criteria which the applicant must meet before a certificate of need will be issued for a new cardiac catheterization service. Among the criteria is the requirement that the applicant must have a population base of approximately 200,000-300,000, and also be able to project a catheterization caseload of at least 450 procedures per year.
For a one-year period ending January 1, 1988, medical facilities could apply for a certificate of need to establish cardiac catheterization services without also providing cardiac surgery at its facility. Before this one-year period a facility proposing to establish cardiac catherization services had to also offer cardiac surgery. On December 31, 1987, the last day of the one-year period, Golden Triangle filed a certificate of need application with MSDH requesting authorization to establish cardiac catheterization services.[1]
The application of Golden Triangle stated, that based on patient origins, its service area consisted of six counties in Mississippi (Lowndes, Noxubee, Oktibbeha, Winston, Clay and Monroe) and three counties in Alabama (Pickens, Lamar and Fayette). The projected population of these counties in 1990 was 266,002. Golden Triangle also used four methods to project the number of catheterizations it would perform each year, and each method indicated that over 450 procedures would be performed each year. Golden Triangle's application stated that the two hospitals closest to Golden Triangle which provide catheterization services (North Mississippi Medical Center in Tupelo and Jeff Anderson Medical Center in Meridian) would not be adversely affected by the establishment of a catheterization service at Golden Triangle.
The staff of MSDH reviewed Golden Triangle's application and concluded that it was not in substantial compliance with the 1986 State Health Plan. In its report, the staff disputed Golden Triangle's claim that it had a population base of 266,002. The staff found that Golden Triangle's actual service area differed slightly from its claimed service area. According to the report, Golden Triangle's service area consisted of six Mississippi counties (Lowndes, Noxubee, Oktibbeha, Clay, Monroe and Webster) and two Alabama counties (Lamar and Pickens). These counties had a combined projected population in 1990 of 234,689.
The MSDH staff did not use the total population of Golden Triangle's service area as the service area's population base. Instead, the staff used a service area "market share" analysis to determine the population base. The staff first noted that Golden Triangle is located in Mississippi General Hospital Service Area One. At that time there were three hospitals in Service Area One which offered cardiac catheterization services: (1) Magnolia Hospital in Corinth; (2) North Mississippi Medical Center in Tupelo; and (3) Oxford-Lafayette County Hospital in Oxford. The projected 1990 population of Service Area One was 694,179. Using patient origin figures from 1985, 1986, and 1987, the staff apportioned the projected 1990 population of the six Mississippi counties and the two Alabama counties in Golden Triangle's service area to arrive at a population base of 90,233. The staff therefore concluded that Golden Triangle's population base did not meet the 200,000-300,000 requirement. The staff also concluded that using the 90,233 population base, Golden Triangle would not meet the requirement of 450 projected catheterizations per year.
Although the three hospitals in Hospital Service Area One with existing catheterization services each sent a letter to Golden Triangle stating that the establishment of a catheterization service at Golden Triangle *856 would not have an adverse effect on their service, the staff of MSDH concluded that the establishment of a catheterization service at Golden Triangle would indeed have an adverse effect on the existing catheterization programs. Specifically, the staff found that patient origin data from North Mississippi Medical Center in Tupelo indicated that it performed 273 catheterization procedures (22% of its total catheterization procedures) on patients from the service area claimed by Golden Triangle. The staff stated that if Golden Triangle established a catheterization service, it and the three other hospitals with catheterization services in Hospital Service Area One would not be able to perform the procedures at the desired optimum level.
The staff's report was then submitted to the State Health Officer, Dr. Alton B. Cobb, for final review and decision. After a hearing, Dr. Cobb adopted the staff's recommendation of disapproval and entered a final order disapproving Golden Triangle's application. The three grounds for disapproval listed in the final order were: (1) failure to meet the required population base of 200,000-300,000; (2) the population base was insufficient to generate the required minimum of 450 catheterization procedures per year; and (3) the need for the project was not adequately demonstrated.
Golden Triangle appealed MSDH's decision to the Chancery Court of Lowndes County. The Chancellor reversed and mandated that a certificate of need be issued to Golden Triangle. The Chancellor found that MSDH's denial of Golden Triangle's certificate of need was "arbitrary and capricious and not supported by any evidence in the record." Specifically, the Chancellor held that MSDH's application of the service area market share analysis was an arbitrary and capricious act. According to the Chancellor, since the State Health Plan contained no section of definitions, "population base" must be given its generally accepted definition. Therefore, the Chancellor stated that "population base" includes all persons residing within the geographic area to be served. Since the projected 1990 population of Golden Triangle's service area was 234,689, the Chancellor held that Golden Triangle substantially complied with the population base requirement.

LAW
Each of MSDH's assignments of error essentially addresses the same issue: Whether the Chancellor erred in holding that the MSDH acted arbitrarily and capriciously by using a market share analysis to determine Golden Triangle's population base. Therefore, each assignment will necessarily be addressed in the discussion of this single issue.
The scope of review of an appeal of a final order of the Mississippi State Department of Health is controlled by Miss. Code Ann. § 41-7-201(4) (Supp. 1991), which provides in part:
The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.
See also Dept. of Health v. S.W. Miss. Regional Med. Ctr., 580 So.2d 1238, 1239 (Miss. 1991); Magnolia Hospital v. Mississippi State Department of Health, 559 So.2d 1042, 1044 (Miss. 1990); Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972, 974 (Miss. 1989); Grant Center Hospital of Mississippi, Inc. v. Health Group of Jackson, Mississippi, Inc., 528 So.2d 804, 808 (Miss. 1988).
The Chancellor found and Golden Triangle argues that MSDH's use of a market share analysis in determining Golden Triangle's population base was arbitrary and capricious because it was an attempt to use unauthorized and unpublished criteria to evaluate Golden Triangle's certificate of need application. Golden Triangle contends that the 1986 State Health Plan clearly does not require the applicant to demonstrate that it has an individual market *857 share of 200,000-300,000. According to Golden Triangle, it only must show that its entire service area has a population base of 200,000-300,000.
This case is very similar to, and is controlled by, our decision in HTI Health Services of Mississippi d/b/a Vicksburg Medical Center v. Mississippi State Department of Health and Parkview Medical Associates, L.P. d/b/a Parkview Regional Medical Center, Cause No. 91-CC-0087, 603 So.2d 848 (Miss. decided June 10, 1992, and not yet reported). There, we affirmed the Chancery Court of Warren County's decision affirming an order of the MSDH denying the application of Vicksburg Medical Center for a certificate of need for cardiac catheterization services on the grounds that Vicksburg Medical Center did not meet the minimum population base requirement. The MSDH used the same market share analysis to calculate the population base of Vicksburg Medical Center that it used to calculate the population base of Golden Triangle in the instant case. In HTI Health Services, we held that MSDH's use of market share methodology in reviewing certificate of need applications is not arbitrary or capricious. Id. at 853-854.
We therefore hold that MSDH's denial of Golden Triangle's application for a certificate of need was based on substantial evidence and its use of a market share analysis to determine Golden Triangle's population base was not arbitrary or capricious. The market share analysis is merely a statistical method used to evaluate the need for a particular service. It enables the MSDH to determine what portion of the service area's population the applicant is likely to serve. The MSDH measured Golden Triangle's population base by using patient origin reports supplied by Golden Triangle itself and the other hospitals with catheterization services in the same service area and determined that the necessary population base had not been met. The MSDH's determination that the existing catheterization programs in the same service area would be adversely affected by the establishment of a new service in the area is also supported by the evidence.
Therefore, we must reverse the Chancellor's decision and reinstate the MSDH's decision denying Golden Triangle's application for a certificate of need.
REVERSED AND RENDERED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] Other hospitals making last-day filing were Parkview Regional Medical Center and Greenwood Leflore Hospital.