## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-SA-01748-SCT

*DELTA REGIONAL MEDICAL CENTER AND GRENADA LAKE MEDICAL CENTER*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH AND GREENWOOD LEFLORE HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/1998 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | L. CARL HAGWOOD |
| | JAMES T. COX |
| | JAMES D. KOPERNAK |
| | KYLE LESLIE HOLIFIELD |
| ATTORNEYS FOR APPELLEES: | BARRY K. COCKRELL |
| | ELLEN O'NEAL |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 12/16/1999 |
| MOTION FOR REHEARING FILED: | 12/30/99; denied 3/16/2000 |
| MANDATE ISSUED: | 3/23/2000 |

## BEFORE PRATHER, C.J., BANKS AND McRAE, JJ.

## BANKS, JUSTICE, FOR THE COURT:

¶1. This matter is before the Court on appeal from a judgment of the Chancery Court of Hinds County affirming the Mississippi Department of Health's decision to grant a certificate of need to Greenwood Leflore Hospital for the establishment of cardiac catheterization and open-heart surgery services. We affirm.

### I.

¶2. On June 2, 1997, Greenwood Leflore Hospital ("Greenwood Leflore") filed with the Mississippi Department of Health ("Department") a certificate of need ("CON") application for the establishment of cardiac catheterization and open-heart surgery services ("CC/OHS"). In its application, Greenwood Leflore requested CON approval for the establishment of both diagnostic and therapeutic cardiac catheterization services and an open-heart surgery program.

¶3. Greenwood Leflore is in cardiac catheterization/open-heart surgery planning area 2 ("Planning Area 2") which encompasses thirteen counties: DeSoto, Tunica, Quitman, Coahoma, Tallahatchie, Bolivar, Sunflower, Leflore, Carroll, Montgomery, Washington, Humphreys, and Holmes. According to the projected year 2000 population estimate, these thirteen counties will have a total population of 402,058. Since there are existing providers within Planning Area 2, the Department does not assess the need for additional providers on the total population of the entire planning area, but on the applicant's actual market share of the planning area's population. This is determined using patient origin and discharge data.

¶4. The Department's staff analyzed the patient origin data for Greenwood Leflore from the quarter ending on July 31, 1996, through the quarter ending April 31, 1997, and compiled a chart reflecting the total number of patients from each of the thirteen counties in Planning Area 2 who were treated at Greenwood Leflore and the percentage of Greenwood Leflore's total patient volume attributable to each of those counties. By eliminating those counties from which Greenwood Leflore drew less than two percent (2%) of its patient support, the staff narrowed Greenwood Leflore's primary service area to seven counties: Leflore, Carroll, Sunflower, Holmes, Tallahatchie, Montgomery, and Humphreys counties. All of these are within Planning Area 2, and 95.6% of Greenwood Leflore's patient support comes from those counties. The staff concluded that only two other providers, Delta Regional Medical Center ("Delta") located in Greenville, Mississippi, and Grenada Lake Medical Center ("Grenada Lake") located in Grenada, Mississippi, could capture a significant portion of the market in Greenwood Leflore's primary service area.

¶5. The staff then determined Greenwood Leflore's, Delta's and Grenada Lake's respective market shares of Planning Area 2, and, based thereon, determined the percentage of the population of Planning Area 2 attributable to each. The staff did this by determining the total number of patients from each county who sought care at Greenwood Leflore, Delta and Grenada Lake. From the total, the staff determined the percentage attributable to Greenwood Leflore, Delta and Grenada Lake, respectively. Using this method, the Department concluded that 149,968 persons, or 37.3% of the total population of Planning Area 2, were attributable to Greenwood Leflore.

¶6. Subsequently, the Department deemed Greenwood Leflore's application complete on July 1, 1997. A hearing was requested on the application by Delta and Grenada Lake.

¶7. A public hearing on the Greenwood Leflore application was conducted on November 19, 20, and 21, 1997. Grenada Lake, Delta and Greenwood Leflore, through representatives and counsel, appeared at the hearing, participated in all proceedings, and offered testimony and evidence. A complete record of the hearing was made.

¶8. Following the conclusion of the public hearing, the Hearing Officer reviewed all evidence and testimony presented at the hearing. On June 3, 1998, the Hearing Officer recommended approval of Greenwood Leflore's application.

¶9. On June 4, 1998, the State Health Officer issued his decision, in which he concurred with the recommendations of the Hearing Officer and the Department of Health's staff. The Department approved the Greenwood Leflore Hospital application.

¶10. Pursuant to Miss. Code Ann. § 41-7-201 (Supp. 1999), Delta and Grenada Lake appealed the Department's decision to the Chancery Court of the First Judicial District of Hinds County. On September 30, 1998, the Chancellor affirmed the State Health Officer's decision granting the Certificate of Need to

Greenwood Leflore Hospital.

¶11. Delta and Grenada Lake timely appealed from that judgment.

## II.

¶12. This Court's standard of review for an appeal of a final order of the Mississippi State Department of Health is controlled by Miss. Code Ann. § 41-7- 201(2)(f) (Supp.1999), which provides in part:

> The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal...

This is nothing more than a statutory limitation upon the scope of judicial review of administrative agency decisions, which is the arbitrary and capricious standard. *Magnolia Hosp. v. Mississippi State Dep't of Health,* 559 So. 2d 1042, 1044 (Miss. 1990). Decisions of administrative agencies are given great deference. *Melody Manor Convalescent Ctr. v. Mississippi State Dep't. of Health*, 546 So. 2d 972, 974 (Miss. 1989). The burden of proof rests on the challenging party to prove that the Department erred. *Id*.

## III.

¶13. Delta/Grenada Lake argue that the chancery court erred in concluding that Greenwood Leflore met the minimum population criterion. Specifically, Delta/Grenada Lake argue that the market sharing methodology used to determine the minimum population is irrational. Grenada Lake argues that if a rational methodology is used, then Greenwood Leflore does not meet the required 100,000 minimum population base.[1]

¶14. Delta and Grenada Lake argue that the point of market sharing, using this case as an example, is to determine that percentage of the total population of Planning Area 2 that will seek CC/OHS services at Greenwood Leflore. Delta and Grenada Lake assert that the Department's method is not founded in reality. Focusing on four counties, based on information from May 1996 to April 1997, Delta and Grenada Lake argue that potential patients in those counties did not use CC/OHS services as expected by the Department.

¶15. The DeSoto County residents did not all go to a CC/OHS in its proposed area. Delta argues that given the proximity and quality of healthcare in Memphis available to DeSoto County residents, it is ridiculous to assume, as the Department's methodology seems to indicate, that Delta could capture 100% of the DeSoto County market, especially since Delta had previously only captured 1 in 519 (.002%) of the patients from DeSoto County.

¶16. The staff attributed 71.82% of the population of Sunflower County to Greenwood Leflore, but from May 1996 to April 1997 only 79 of the 812 (9.72%) people from Sunflower County that sought healthcare actually went to Greenwood Leflore.

¶17. The Department attributed 16.05% (6,740) of the population of Bolivar County to Greenwood Leflore and 80.25% (33,703) of the population to Delta, but of the 974 people who sought healthcare only

13(1.33%) went to Greenwood Leflore and 65 (6.67%) went to Delta.

¶18. In Tunica County, the Department attributed 50% (4,298) to Greenwood Leflore and 50% (4,298) to Grenada Lake, but of the 142 people from Tunica that sought healthcare only one (1) person went to Grenada Lake and one (1) person went to Greenwood Leflore.

¶19. Delta concludes that these examples serve to illustrate the gross distortion of the percentage of a particular CC/OHSPA's population attributable to a CON applicant, which is created by the Department's market sharing method.

¶20. Grenada Lake makes clear that it does not challenge the use of statistical market sharing methodology or the use of patient origin studies as relevant data in performing a market share calculation. Grenada Lake further states that it does not contend that the mathematical methodology employed by the Department is inferior. Grenada Lake asserts that this Court has decided those issues in a line of cases including the following: *Magnolia Hosp. v. Mississippi State Dep't of Health*, 559 So. 2d 1042 (Miss. 1990); *Mississippi State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238 (Miss. 1991) ; *HTI Health Servs. of Miss. Inc. v. Mississippi State Dep't of Health*, 603 So. 2d 848 (Miss. 1992); *Mississippi State Dep't of Health v. Golden Triangle Reg'l Med. Ctr.*, 603 So. 2d 854 (Miss. 1992); *Parkview Med. Assocs. v. Mississippi State Dep't of Health*, 609 So. 2d 441 (Miss. 1991); *Delta Med. Ctr. v. Greenwood Leflore Hosp.*, 609 So. 2d 1276 (Miss. 1992).

¶21. Instead, Grenada Lake argues that the methodology used by the Department is irrational. Grenada Lake argues that the simplest and most obvious way to apportion each county's population base for facility discharges is as follows: Compare a hospital's annual discharges from a particular county to that county's total annual discharge as whole; convert to a percent and multiply times the total population.[2] Grenada Lake argues that the Department's formula includes a relationship that cannot be statistically compared to the entire population because the entire county population has no statistical history of using any of the three hospitals. Grenada Lake argues that the Department's formula employ's neither statistical probability, nor "the whole notion of relative frequency, which is the basis or statistical inference," according to the testimony of Mark McComb, expert statistician.[3] Grenada Lake argues that when its statistical formula is applied (using the Department's patient origin data), the result is a population base of 46,792, far below the required 100,000 minimum.

¶22. The Department and Greenwood Leflore argue that this Court has recognized that the Department of Health has a specialized skill in determining the "tools" needed to apply a standard or criteria, citing to *Southwest Mississippi*, 580 So. 2d at 1242 and *HTI Health Servs.*, 603 So. 2d at 853. The Department and Greenwood Leflore further argue that a reviewing court should not substitute what it considers to be a better tool with the tool used by the Department.

¶23. This Court has previously considered the validity of the market share analysis approach and methodology. *HTI Health Servs. of Miss. Inc. v. Mississippi State Dep't of Health*, 603 So. 2d 848 (Miss. 1992). In *HTI Health Servs.,* this Court stated as follows:

> Market sharing is not a standard, rule or regulation. Rather, it is a methodology, or statistical yardstick, used by MSDH to calculate or measure the population base in areas where there are multiple providers of the same service. Put another way, market sharing is only a tool used to measure and determine whether particular standards and criteria contained within the four corners of the State

Health Plan have been satisfied. The State Health Plan identifies standards and criteria which must be met, but even Vicksburg Medical Center concedes that the State Health Plan does not identify specific methods which must be used to determine if the requirements of the Plan have been met.

**The methodology used to determine or measure population base in any given case should not be carved in granite; instead, some flexibility is required. It is prudent to utilize a methodology that will accommodate the various and sundry circumstances found in each individual case. The objective of it all, in the final analysis, is to determine need....**

*Id.* at 853. (emphasis added). In *HTI Health Servs.*, there was no assertion by either party that the methodology used by the Department was mathematically or statistically inferior. *Id*.

¶24. Ed Witek, an expert in health planning, testified to the test's rationality stating as follows:

it is only reasonable if you're trying to promote local access to care, that the relevant numbers you would look at would be the division of proposing or existing providers of the service. So that made the denominator that we've heard referenced in this case would be appropriately the Greenwood Leflore and Grenada Lake. And then you look at the relative market share of those providers of those cases. The whole idea is you're trying to promote local access to care.[4]

¶25. While Delta and Grenada Lake assert that they do not attack the mathematical validity of the Department's market analysis methodology as inferior, that is exactly what they are doing. At bottom they suggest that the calculation of a population base should be grounded in a prediction of potential use as opposed to the assumption implicit in the plan that a certain population minimum is sufficient as a predictor. Moreover, they urge a system which in effect allocates market share of Mississippi residents to providers who are beyond the control of the department.

¶26. This Court has consistently upheld this market share methodology used by the Department. *See Delta Med. Ctr. v. Greenwood Leflore Hosp*., 609 So. 2d 1276 (Court affirmed MSDH's use of market share methodology); *Parkview Med. Assocs.*, 609 So. 2d 441(Court affirmed MSDH's use of market share methodology); *Golden Triangle*, 603 So. 2d 854 (Court affirmed MSDH's use of market share methodology); *HTI Health Servs.*, 603 So. 2d at 853 (Court upheld market share analysis approach and methodology used by MSDH in reviewing an application by Greenwood Leflore Hospital); *Southwest*, 580 So. 2d at 1241-42 (Court found that MSDH use of historical patient origin data is not an arbitrary method to determine service area and population base for cardiac catheterization proposal); *Magnolia Hosp.*, 559 So. 2d at 1045 (Court held that the state health officer's factual determination that service area did not meet minimum population required by state health plan did not turn upon undisclosed information and unpromulgated criteria, but instead was supported by substantial evidence in the record).

¶27. Delta and Grenada Lake candidly admit that they have the burden to show that the lower court erred in affirming the Department's decision to grant the Certificate of Need. Here, to satisfy that burden Delta and Grenada Lake simply assert that another formula, as presented by their statistician, should be used for market share analysis, which would result in Greenwood Leflore not having the minimum population base required for a new CC/OHS.

¶28. In *Golden Triangle*, this Court affirmed the use of the same methodology used in this case. 603 So. 2d at 856. There, the Department measured Golden Triangle's population base by using patient origin

reports supplied by Golden Triangle and the other hospitals with catheterization services in the same service area and determined that the minimum population base was not met. *Id*. at 856. This Court held that the Department's use of this market share analysis is not arbitrary and capricious. ***Id.***

¶29. Additionally, there is substantial evidence, including testimony by Ed Witek, which supports the Department's reason for using the market share analysis.

¶30. Viewing the evidence as reflected in the record, considering this Court's clear precedents on this issue, and applying this Court's applicable standard of review, we conclude that the methodology used by the Department to derive market share is not so flawed as to render the decision of the Department in reliance thereon arbitrary and capricious.

## IV.

¶31. Delta and Grenada Lake argue that the Department did not consider the impact on existing providers requirement in granting Greenwood Leflore's Certificate of Need.

¶32. The pertinent part of the State Health Plan, which Delta/Grenada Lake argue was not considered, states as follows:

> 3. <u>Impact on Existing Providers</u>: An Applicant proposing to acquire or other wise control diagnostic cardiac catheterization equipment and/or offer diagnostic cardiac catheterization services shall document that each existing unit, which is **(a) in the CC/OHSPA and (b) within forty-five (45) miles of the applicant**, has been utilized for a minimum of 450 procedures (both diagnostic and therapeutic) per year for the two most recent years as reflected in data supplied to and/or verified by the Mississippi State Department of Health....

*Mississippi State Health Plan*, page IX-70, App. 1; 1996-1997 (Emphasis added).

¶33. The Department and Greenwood Leflore argue that Delta and Grenada Lake should not be considered because neither Delta nor Grenada Lake is within 45 miles of Greenwood Leflore Hospital. The Department and Greenwood Leflore further contend that the language of the statute requires that an applicant must be both within a 45-mile radius of Greenwood Leflore **and** within the same CC/OHSPA as an existing unit. For support of this proposition, Delta/Grenada Lake cite to ***Village of Myrtle v. St. Louis-San Francisco Ry.***, 239 Miss. 110, 116, 121 So. 2d 717, 719 (1960), where this Court stated, "[t]he conjunction 'and' when used to connect phrases or sentences binds together and relates one to the other."

¶34. Delta and Grenada Lake also argue that the Department did not address the general considerations, as stated in Chapter 8 of the Department's Certificate of Need Review Manual, under the heading "Criteria Used By State Department of Health for Evaluation of Projects; General Considerations." The pertinent part of that manual states that:

> Need for the Project: One or more of the following may be considered in determining whether a need for the project exists:
>
> * * *

d. The probable effect of the proposed facility or service on existing facilities or services providing similar services to those proposed will be considered. When the service area of the proposed facility or service overlaps the service area of an existing facility or service, then the effect on the existing facility or service may be considered. The applicant or interested party must clearly present the methodologies and assumptions upon which any proposed project's impact on utilization in affected facilities or services is calculated. Also, the appropriate and efficient use of existing facilities/services may be considered.

1997 Mississippi State Department of Health Certificate of Need Review Manual, pg. 52 ¶d.

¶35. Under this provision, Delta argues that if Greenwood Leflore captured even half of the patients treated at Delta from the primary service area claimed by Greenwood Leflore, that it would be a significant impact on Delta. Delta contends that it would lose 11% of the patients being treated at its open-heart surgery unit and 17.5% of the patients being treated at its cardiac catheterization unit, which is yet to achieve the projected minimum of 300 procedures per year.

¶36. Besides losing patients, Delta argues that it stands to lose staff and support personnel which were recruited from all over the South and trained at considerable expense, because there is no other talent pool in the Delta from which Greenwood Leflore may draw qualified personnel. Delta argues that the bottom line is that, if Greenwood Leflore's CC/OHS unit becomes operational, Delta stands a good chance of never reaching its projected 450 cardiac catheterization procedures per year or 150 open-heart cases per year, in spite of having done everything right. Consequently, Delta argues that in ruling in favor of Greenwood Leflore's application, it was error for the Department to fail to take the negative effect on Delta's CC/OHS unit into consideration.

¶37. On the other hand, Greenwood Leflore and the Department argue that the general review criteria in this area are expressed in permissive, not mandatory terms, and vest in the Department a substantial amount of discretion in taking into account the effect of a proposed program on existing providers, along with other factors relating to need. The Department argues that it has been given discretion to take "any one or more" of the factors into account. The Department and Greenwood Leflore argue that even if these requirements were mandatory, the Department properly considered the impact of the proposed project on both Grenada Lake and Delta. The Department and Greenwood Leflore argue that the standard does not require the Department to disapprove the project merely because there was some impact.

¶38. Greenwood Leflore Hospital, the applicant, was not within a 45-mile radius of any existing provider. This is a threshold inquiry that must be satisfied before an impact on existing CC/OHS providers can be determined. The record reflects that the Department considered the impact on existing providers and decided that there was no impact on existing providers.

¶39. Harold B. Armstrong, Director of the Department's Division of Health Planning and Resources Development, testified that Greenwood Leflore and Delta tend to have different service areas with few counties overlapping, but the overlap did not preclude approval of Greenwood Leflore's proposal, which independently met the relevant criteria. Armstrong further testified that Grenada Lake was outside the designated cardiac catheterization/open-heart surgery planning area. Armstrong further testified that the entire planing area in question contains a population of over 400,000, which is far more than needed to generate the minimum required for procedures in both Delta and Greenwood Leflore, based on the state use rates.

¶40. Ed Witek testified that Grenada Lake has many counties in another planning area which are not located within Greenwood Leflore's planning area for this particular service. Witek further testified that there is a very small market share of acute care discharges in the seven counties (comprising Greenwood Leflore's service area) held by Delta and Grenada Lake.

¶41. As evinced by the aforementioned testimony, the Department considered both the impact on existing providers and the need for these services to the area, in granting the CON. The Department considered ample testimony that reflects that there is a need for the Greenwood Leflore's CC/OHS because it would provide better access to cardiac services for rural areas with minorities and poor people. This assignment of error is without merit.

## V.

¶42. The chancery court's decision affirming the Department's decision to grant a Certificate of Need to Greenwood Lake Hospital was not error. The Department's methodology is not flawed, and the Department did consider the impact on existing providers. Accordingly, the judgment of Hinds County Chancery Court is affirmed.

¶43. **AFFIRMED.**

> **PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., McRAE, SMITH, MILLS, WALLER AND COBB, JJ., CONCUR.**

1. The State Health Plan requires a minimum population base of 100,000 for applications proposing the establishment of cardiac catheterization services. The total population within a given CC/OHSPA is used when determining the need for services. Population outside the applicant's CC/OHSPA will be considered in determining need only when the applicant submits adequate documentation acceptable to the Mississippi State Department of Health, such as valid patient origin studies. 1998 State Health Plan Certificate of Need Criteria and Standards for Cardiac Catheterization and Open-Heart Surgery Services. IX-69(8).

2. Grenada Lake's proposed formula looks like this:



| Greenwood Leflore's Annual Discharges from County A | | $x$ |
|---|---|---|
| Total Annual Discharge (to all hospitals) from County A | = | Total Population of County A |
| $x$ = Portion of the Total Population County A Attributable to Greenwood Leflore | | |

3. Grenada Lake asserts that the Department's formula looks like this:

$$\frac{\text{Greenwood Leflore's Annual Discharges from County A}}{\text{Discharges from County A to Greenwood Leflore, Delta Regional Medical Center and Grenada Lake Medical Center}} = \frac{x}{\text{Total Population of County A}}$$

*x = Portion of the Total Population of County A the Department Attributed to Greenwood Leflore Population Base*

4. *See* formula on footnote 3 *supra.*