## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-SA-02123-SCT

*JEFF ANDERSON REGIONAL MEDICAL CENTER*

*v.*

*MISSISSIPPI STATE DEPARTMENT OF HEALTH AND RUSH FOUNDATION HOSPITAL*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/21/2000 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES T. COX |
| | JAMES D. KOPERNAK |
| ATTORNEYS FOR APPELLEES: | BARRY K. COCKRELL |
| | MICHAEL R. HESS |
| | ELLEN Y. DALE O'NEAL |
| | J. RICHARD BARRY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED-10/31/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/21/2001 |

**BEFORE McRAE, P.J., COBB AND DIAZ, JJ.**

**McRAE, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Rush Foundation Hospital (Rush) applied for and was granted a Certificate of Need (CON) for the implementation of an additional invasive cardiac care center in the Meridian area. The Mississippi State Department of Health (Department) approved the CON. After an administrative hearing which also resulted in approval of the CON, Jeff Anderson Regional Medical Center (Jeff Anderson RMC) appealed to the Chancery Court of the First Judicial District of Hinds County alleging that the methodology employed by the Department was arbitrary and capricious and that the Department did not properly consider the cost containment purposes of the CON laws in making its decision to grant the CON to Rush. The chancellor affirmed the approval, and Jeff Anderson RMC filed a notice of appeal to this Court. We affirm the chancellor's decision to approve the CON, noting that, while we find the Department's actions were not arbitrary and capricious and that there was substantial evidence in the record to support the decision, this is a legislative process which should be reviewed by the Legislature for an assessment as to whether there is a dire need or circumstance for a CON.

## FACTS

¶2. Jeff Anderson RMC is an established therapeutic cardiac catheterization and open-heart surgery center

servicing the Meridian area. Rush, also located in Meridian, filed an application for a CON to offer similar services in the Meridian area. Jeff Anderson RMC objected to having a similar facility serving essentially the same area arguing there is no need for duplicate services in this part of Mississippi. Jeff Anderson RMC requested a public hearing on the matter. A public hearing was held before a Hearing Officer of the Department. At the public hearing, the Staff of the Department recommended approval of the CON to the State Health Officer. The Hearing Officer also recommended approval of the project to the State Health Officer who, in turn, approved the application and granted the CON by final order. From this decision, Jeff Anderson RMC appealed to the Chancery Court of Hinds County. Upon review of the record, the Chancellor affirmed the agency decision. Thereafter, Jeff Anderson RMC timely filed a notice of appeal to this Court arguing that the chancellor incorrectly read *HTI Health Servs. of Miss., Inc. v. Mississippi State Dep't of Health*, 603 So. 2d 848 (Miss. 1992), and extended the holding in *Delta Reg'l Med. Ctr. v. Mississippi State Dep't of Health*, 759 So. 2d 1174 (Miss. 1999), without warrant.

¶3. Jeff Anderson RMC believes the cost containment purpose of CON laws is compromised by allowing two invasive cardiac care centers in this particular area. Jeff Anderson RMC also contends that the methodology employed by the Department in determining the population of two Alabama counties was arbitrary and capricious.

## DISCUSSION

### I. IS THE METHODOLOGY EMPLOYED BY THE DEPARTMENT IN CALCULATING OUT-OF-STATE POPULATION FOR INCLUSION IN RUSH'S POPULATION BASE TO DETERMINE NEED ARBITRARY AND CAPRICIOUS?

¶4. A brief explanation of the factors to be considered in evaluating a proposal in a CON application will be discussed first. The main determination to be made is need, hence the title "Certificate of Need." In this determination, the proposal must be consistent with the specifications and criteria established by the Department and in substantial compliance with the Mississippi State Health Plan (Plan). Miss. Code Ann. § 41-7-193 (2001). In our review, we will not determine whether there is an actual need for the Rush project. Instead, we will look to make sure there was substantial evidence to support the decision and that the decision was not arbitrary and capricious.

¶5. Mississippi is divided into seven planning areas. The Plan states that need shall be determined using designated planning areas (Cardiac Catheterization/Open-Heart Surgery Planning Areas (CC/OHSPAs)), *1999 Mississippi State Health Plan*, IX-79, and a minimum population base of 100,000 per planning area is required, with exception. *Id.* at IX-77. If an applicant submits "adequate documentation acceptable to the [Department]," population outside the applicant's planning area will be considered in determining need. *Id.* at IX-76. The Plan does not specify how a population base is to be determined, so we must look to precedent. The Department uses "market sharing" as the method of determining a population base when service areas overlap.[1]

¶6. Rush included in its population base calculation the population of seven Mississippi counties, five of which are within its planning area, [2] and two Alabama counties. Rush used the market sharing methodology to calculate the population base from the counties outside its planning area. Jeff Anderson RMC acknowledges that the market sharing methodology is a proper tool, as recognized by this Court in *HTI*, and that out-of-state population can be considered in calculating a population base. *HTI,* 603 So. 2d at 852. However, Jeff Anderson RMC argues that Rush did not submit "adequate documentation" to the

Department to warrant consideration of out of area population, and therefore, the market sharing methodology was not properly applied.

¶7. Jeff Anderson RMC takes issue with the method of apportionment of counties not within the planning area as part of the population base. Jeff Anderson RMC distinguishes the *HTI* case and the case at bar based upon review of the Department's Staff Analysis in that case. Jeff Anderson RMC asserts that in *HTI*, Hinds County was within the applicant's service area but that it also had three other existing open heart service facilities. Instead of awarding the entire county population to the applicant as part of the population base, the Department gave only a percentage of the population toward the population base. The reasoning was that the discharges received by Hinds County amounted to only 1% of the total for Hinds County, and therefore, only this percentage was includable in the population base.

¶8. In light of this, Jeff Anderson RMC argues that the Department improperly gave Rush 100% of the population of the two Alabama counties noting that the definition of population base is "that proportion of the population reasonably expected to be served by the facility proposing the new service." *Id.* Jeff Anderson RMC contends that this apportionment is mere speculation and is therefore, an arbitrary and capricious agency action.

¶9. While Jeff Anderson RMC's frustration is understandable, the issues before us are whether the order granting the CON was supported by substantial evidence and whether the methodology employed was arbitrary and capricious. We conclude that there was substantial evidence to support the final order and that the methodology employed was not arbitrary and capricious. Jeff Anderson RMC's points relate to a legislative process and would be more appropriately addressed by the Legislature.

¶10. We have noted that patient origin data from two-week sample periods is a sufficient method for determining service area and population base. *Miss. State Dep't of Health v. Southwest Miss. Reg'l Med. Ctr.*, 580 So. 2d 1238, 1240-41 (Miss. 1991). Therefore, Rush's four two-week patient origin studies constitute "adequate documentation" as required by the Plan to allow the use of population outside the planning area to be considered in the need analysis. Also, Rush provided statistical studies concerning Alabama patients which the Hearing Officer also considered.

¶11. Further, the market share methodology has been approved by this Court in many cases, most notably *HTI* and *__Delta Reg'l__*. It should also be noted that

> [t]he methodology used to determine or measure population base in any given case should not be carved in granite; instead some flexibility is required. It is prudent to utilize the methodology that will accommodate the various and sundry circumstances found in each individual case. The objective of it all, in the final analysis, is to determine need.

*HTI,* 603 So. 2d at 853. Even though the methodology employed in this case has been held valid in previous cases, it is not the only factor to be considered. As Rush points out, such factors as the number of cardiologists in an area can be considered in calculating a population base. This is especially poignant here since there is only one cardiologist serving the Meridian area through Jeff Anderson RMC.

¶12. Further, both parties offered extensive testimony and substantial evidence at the hearing. The record is voluminous. The Hearing Officer reviewed all materials before him and made extensive findings of fact and conclusions of law which were submitted to the State Health Officer with a recommendation for approval of

the Rush CON. The chancery court reviewed the record and accordingly affirmed the Department's final order granting Rush the CON. We find no error in the chancery court's holding.

## II. DID THE DEPARTMENT PROPERLY CONSIDER THE COST CONTAINMENT PURPOSES OF THE CERTIFICATE OF NEED (CON) LAWS IN APPROVING RUSH'S APPLICATION?

¶13. Jeff Anderson RMC argues that the Department ignored the CON law's cost containment purposes in approving Rush's application. The record is contrary to this point in that the Hearing Officer specifically found the approval of Rush's application to promote cost containment because Rush proposed lower rates. The Hearing Officer also noted that the Rush facility would benefit the entire community by providing a cost-effective competitor. Also, testimony from experts and Department agents included discussions of cost containment. There is substantial evidence in the record indicating that the Department properly considered cost containment in its decision.

## CONCLUSION

¶14. We find that the methodology employed by the Department in calculating the out-of-state population for inclusion in Rush's population base to determine need was not arbitrary and capricious. Further, we find there was substantial evidence in the record to show the Department properly considered the cost containment purposes of the CON laws in approving Rush's application. Finding that there was substantial evidence in the record to support the final order approving Rush's application for a CON, we affirm the judgment of the chancery court upholding the decision of the Department. We note that this case deals with a legislative process which should be reviewed by the Legislature to evaluate whether there is a dire need or circumstance warranting the issuance of a certificate of need.

¶15. **AFFIRMED.**

**SMITH, MILLS, WALLER, COBB, DIAZ, AND EASLEY, JJ., CONCUR. PITTMAN, C.J., and BANKS, P.J., NOT PARTICIPATING.**

1. A service area is the geographical area from which a hospital receives patients. The Department defines a facility's service area as the counties from which the facility receives 2% or more of its discharges.

2. The definition of and significance of planning areas will be discussed later.