ROBERTS, J.,
for the Court:
¶ 1. Laura Shontelle Barnes was employed as an elementary school teacher with the Taylorsville Elementary School in the Smith County School District (District) for eleven years. On May 12, 2009, Barnes’s employment was terminated after she violated the District’s drug and alcohol policy by refusing to submit to a drug test when requested. The Smith County School Board (Board) held a hearing on July 17, 2009, and after hearing evidence from Barnes and the District, the Board affirmed the District’s Superintendent of Education’s decision to terminate Barnes’s employment. Barnes then appealed the Board’s decision to the Smith County Chancery Court. On March 10, 2010, the chancery court reversed the Board’s decision and reinstated Barnes’s employment at Taylorsville Elementary School. Feeling *78 aggrieved, the Board now appeals the chancery court’s reversal of its decision.
FACTS AND PROCEDURAL HISTORY
¶ 2. This appeal stems from an incident that occurred on May 6-7, 2009, at the Taylorsville Elementary School. On May 7, 2009, Yvonne Dees, Taylorsville Elementary School principal, received reports from other teachers that on May 6, 2009, Barnes, a first-grade teacher at the school, was lying on the classroom floor with her eyes closed and the lights off. The children were still in the classroom at this time, and several of the students informed other teachers that Barnes “fell out.” The teachers approached Barnes, who was still lying on the floor, and she informed them that she was in severe pain due to an ovarian cyst. The other teachers assisted her by watching the children and helped her sign out of work for the day. She left work at noon that day, and she testified she took some pain medication that had been prescribed to her for a previous dental procedure.
¶ 3. After hearing the reports of Barnes’s behavior from the teachers, Dees called Jeff Duvall, Taylorsville Attendance Center principal, to discuss the incident with him. Duvall then called Priscilla Ma-gee, the District’s assistant superintendent, to determine the procedure for addressing the incident. Based on Duvall’s call to Assistant Superintendent Magee, the decision was made to request that Barnes submit to a drug test pursuant to the District’s drug and alcohol policy.
¶ 4. When Barnes returned to work on May 7, 2009, she was summoned to Dees’s office and was told that she needed to accompany them to a facility in Magee, Mississippi, to have a drug test performed. Barnes, although visibly upset, initially agreed to take the test. Barnes, Dees, and the Taylorsville assistant superintendent Magee proceeded to the facility located in Magee. At the school board hearing, Dees testified that shortly after they began driving to the facility, Barnes stated she wished to resign. They pulled the car over and called Duvall who informed Dees that she should draft a letter of resignation for Barnes to sign. Before signing the letter, Barnes changed her mind and, once again, agreed to take the drug test. They resumed traveling to the testing facility. However, en route to the testing facility, she received a call from her attorney advising her not to take the test. At 10:38 a.m., Barnes signed a statement indicating that she was now refusing to take the test. When she arrived back at the school, and after she had made the decision to refuse to take the drug test, Barnes testified that Duvall told her that if she did not take the drug test, he would suspend her for one day. Barnes left the school that morning, but she returned sometime later that afternoon after she had received advice from her father to take the test. When she told Dees that she would submit to the drug test, Dees informed her that it was too late to take the test since she had already refused the test earlier. Still later on the same day, Barnes went to a facility in Bay Springs, Mississippi, and took a drug test. Although the results of the drug test were not presented by Barnes to the Board, Barnes testified that she tested positive for opiates and was on Xanax and Ambien. She claimed that she had prescriptions for all of the controlled substances she was taking.
¶ 5. In a letter dated May 12, 2009, Barnes received notice from Smith County Superintendent of Education Jimmy Hancock stating that her employment was terminated because of her refusal “to submit to a drug test, neglect of duty, and insubordination.” The letter also informed her *79 that she was entitled to a hearing before the Board on the matter. Barnes requested a hearing, and one was set for July 17, 2009. At the hearing, Dees, Duvall, Hancock, and Barnes all testified as to the events leading up to and culminating in Barnes’s termination. Further, written statements from six teachers that witnessed the incident on May 6, 2009, were presented into evidence. In her written statement, Therese Pittman described the incident as follows:
I went to Mrs. Barnes[’s] door to get the students for an activity. The lights were out in the room and the students were running all around the room. A little girl came up to me and said “our teacher has fell out.” I turned and saw Ms. Rhodes coming toward me. She said Mrs. Barnes is hurting so she is lying down. I walked into the room and over to where she was lying on the floor. I looked down at her and her eyes were closed, I looked to make sure she was breathing. I turned and said loudly, to see if Mrs. Barnes would respond, [“]Okay girls line up.[”] I left the room with the girls and Mrs. Barnes never got up.
Janice Dozier, another teacher at the school, stated that she saw Barnes walking very slowly down the hall on the morning of May 6, 2009. When Dozier asked what was wrong, Barnes explained that her ovaries were hurting. Dozier further explained that after lunch, one of Barnes’s students came into her room and said that Barnes needed her. When she arrived in Barnes’s room, she saw Barnes “lying on the carpet crying with her side hurting.” In the statement submitted by fellow teacher Melissa Jackson, she states that “Mrs. Barnes was conscience [sic] and able to carry on a conversation the entire time.” Barnes did not present the Board with a copy of any prescriptions for her medications nor any statements from her treating physicians who had prescribed the medications she took. Likewise, she did not present any corroborating medical documentation or testimony supporting her claim that she was in severe pain from ovarian cysts.
¶ 6. Based on the evidence presented, the Board unanimously affirmed the District’s decision to terminate Barnes’s employment. The Board found that Barnes was given proper notice and a hearing on the matter, as well as the District’s written reasons for her dismissal. It further found that her dismissal was a proper employment decision that was supported by substantial evidence, was not arbitrary or capricious, and did not violate Barnes’s constitutional or statutory rights.
¶ 7. Barnes then appealed the Board’s decision to the chancery court. At a hearing held on March 10, 2010, the chancellor reinstated Barnes’s employment. The chancellor found that the Board’s decision was arbitrary or capricious because the Board strictly held Barnes to the drug and alcohol policy but failed to hold itself to the same standard. Although Barnes made no claim at the hearing before the Board that the assistant superintendent was without authority to act in the superintendent’s absence when giving Duvall permission to request that Barnes take a drug test. But the chancellor stated that the record did not show, as required by the District’s drug and alcohol policy, that the superintendent was the one who made the decision as to whether there was reasonable suspicion sufficient to request Barnes take a drug test or that he had appointed someone to act on his behalf.
¶ 8. Feeling aggrieved by the chancellor’s decision to reinstate Barnes, the District now appeals and raises the following issue:
*80 The chancery court erred in reversing the Board’s decision because the Board’s decision was supported by substantial evidence; was not arbitrary or capricious; nor was it in violation of some statutory or constitutional right of Barnes.
STANDARD OF REVIEW
¶ 9. It should first be noted that “[t]his Court assigns great deference to decisions of administrative agencies.” St. Dominic-Jackson Mem’l Hosp. v. Miss. State Dep’t of Health, 910 So.2d 1077, 1081 (¶ 11) (Miss.2005) (citing Delta Reg’l Med. Ctr. v. Miss. State Dep’t of Health, 759 So.2d 1174, 1176 (Miss.1999)). “When this Court reviews a decision by a chancery or circuit court concerning an agency action, we apply the same standard of review that the lower courts are bound to follow.” Smith County Sch. Dist. v. Campbell, 18 So.3d 335, 336 (¶8) (Miss.Ct.App.2009) (citing Miss. Sierra Club, Inc. v. Miss. Dep’t of Envtl. Quality, 819 So.2d 515, 519 (¶ 15) (Miss.2005)). In this case, we apply the same standard of review that the chancery court applied, which is provided by statute pursuant to Mississippi Code Annotated section 37-9-113(3)(a)-(c) (Rev. 2001) as follows:
The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
(a) Not supported by any substantial evidence;
(b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Therefore, our review is limited by this standard.
ANALYSIS
¶ 10. The Board argues that its decision was neither arbitrary or capricious nor in violation of Barnes’s statutory or constitutional rights; instead, it was based on substantial evidence. The Board submits that Barnes’s behavior was sufficient to cause the administrators to have reasonable suspicion that Barnes might have been under the influence of drugs on May 6, 2009, while in the classroom supervising her students. Based on the reasonable suspicion, the administrators were permitted by the District’s assistant superintendent to request that Barnes take a drug test pursuant to the drug and alcohol policy of which Barnes was previously aware. The Board further argues that Barnes’s refusal to submit to the drug test warranted discipline, and the termination of her employment was an acceptable disciplinary action under the drug and alcohol policy in place. The relevant portions of the District’s drug and alcohol policy provides:
4a. Reasonable suspicion is defined under this policy as the belief by Smith County School District that an employee is using or has used drugs or alcohol in violation of Smith County School District’s policy. Reasonable suspicion may be based upon, among other things:
I. Observable phenomena, such as direct observation of drug use and/or the physical symptoms or manifestations of being under the influence of a drug or alcohol;
II. Abnormal conduct or erratic behavior while at work, absenteeism, tardiness, or deterioration in work perfomance;
[[Image here]]
b. If there is reasonable suspicion that an employee is using or had used drugs or consumed alcohol in violation *81 of Smith County School District’s policy, that employee will be required to submit to a drug and/or alcohol test. The superintendent (or in his or her absence/,] an appointed replacement) must approve in advance all reasonable suspicion testing. If the test result is confirmed positive for drugs or alcohol in violation of Smith County School District’s drug and alcohol policy, the employee will be subject to immediate termination of his or her employment with the District.
5. Any employee who refuses to take a drug and alcohol test will be subject to discipline, up to and including immediate termination of employment.
(Emphasis added).
¶ 11. When reinstating Barnes’s employment with Taylorsville Elementary School, the chancellor found that the Board’s decision was arbitrary or capricious under Mississippi Code Annotated section 87 — 9—113(8)(b). At the hearing, the chancellor stated that:
The [ejourt believes that because of the drug and alcohol policy that the school district was correct in asking for the drug test.... The [cjourt believes that the actions upon observing a teacher coming in and lying on the floor, with the lights off, would appear to be abnormal behavior. The [cjourt believes that after looking at the entire record concerning the allegations of pain or sickness on behalf of Ms. Barnes, that her actions would not be abnormal based on her pain and discomfit [sic].
Further, the chancellor found that Barnes was strictly held to the drug and alcohol policy, but the District did not hold itself to the same standard. The chancellor stated that:
The [cjourt believes that Ms. Barnes was wrong when she did not comply with taking the drug test. And the [cjourt believes that the superintendent of education of the school district was wrong when they did not have something in the record showing that in the absence of Mr. Hancock, superintendent of education, that he had appointed a replacement to approve the testing of Ms. Barnes, or some other person whoever that might be, when Mr. Hancock was unavailable and could not make the [reasonable-suspicion] determination.
Because the District did not follow the drug and alcohol policy when it came to obtaining approval from the superintendent and Barnes’s later willingness to comply with the drug-test request, the chancellor found that the Board’s decision was arbitrary and capricious. The Mississippi Supreme Court has defined arbitrary and capricious as follows:
■“Arbitrary” means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational, — implying either a lack of understanding of or a disregard for the fundamental nature of things.
“Capricious” means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.
St. Dominic-Jackson Mem’l Hosp., 910 So.2d at 1082 (¶ 15) (Miss.2005) (citing Attala County Board of Supervisors v. Miss. State Dep’t of Health, 867 So.2d 1019, 1023-24 (Miss.2004)).
¶ 12. The Mississippi Supreme Court has previously noted that, “[w]hile it is true that there are many punishments that *82 would seem less harsh or more appropriate in this case, we must recognize that the law commits this entire matter to the discretion of the school board.” Covington County Sch. Dist. v. G.W., 767 So.2d 187, 192 (¶ 12) (Miss.2000) (citing Clinton Mun. Separate Sch. Dist. v. Byrd, 477 So.2d 237, 242 (Miss.1985)). With the standard of review and our deference to administrative agency decisions in mind, we find that chancellor erred in holding that the Board’s decision was arbitrary and capricious. The evidence in the record before us demonstrates that the Board’s decision was not arbitrary in that it was done according to reason or judgment. The Board relied on the clear language in the District’s drug and alcohol testing policy when affirming the termination of Barnes’s employment. As a long-term employee with the District, Barnes was aware of the policy in place for drug and alcohol testing. She knew that she could be requested to take a drug test if reasonable suspicion was found to request one; she also knew that termination of employment was a possible disciplinary action as a result of a positive drug test or a refusal to take a drug test. The facts surrounding the incident are not in any significant dispute. The Board requested Barnes take the drug test based on abnormal behavior displayed at work during school hours; she refused to take the test. Through its drug and alcohol policy, the District had the prerogative to choose the appropriate punishment, including termination of employment, for Barnes’s refusal to take the drug test when initially requested. The District’s decision to enforce its drug and alcohol policy as it is written is not arbitrary or capricious.
¶ 13. We reverse and render judgment in this case to reinstate the Board’s decision.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF SMITH COUNTY IS REVERSED AND RENDERED TO REINSTATE THE BOARD’S DECISION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., CARLTON AND MAXWELL, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY MYERS, BARNES AND RUSSELL, JJ.