# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-SA-01240-SCT

*ST.DOMINIC-MADISON COUNTY MEDICAL CENTER, ST. DOMINIC-JACKSON MEMORIAL HOSPITAL AND MISSISSIPPI STATE DEPARTMENT OF HEALTH*

**v.**

*MADISON COUNTY MEDICAL CENTER*

## ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/28/2004 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANTS: | KATHRYN RUSSELL GILCHRIST |
| | EDMUND L. BRUNINI |
| | SARAH E. BERRY |
| ATTORNEYS FOR APPELLEE: | THOMAS L. KIRKLAND, JR. |
| | ANDY LOWRY |
| | JULIE ANN BOWMAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/04/2006 |
| MOTION FOR REHEARING FILED: | 09/22/2005; GRANTED |
| MANDATE ISSUED: | |

**EN BANC.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     The motion for rehearing is granted. The prior opinions are withdrawn, and these opinions are substituted therefor.

¶2.     This case concerns whether the Hinds County Chancery Court erred by reversing the approval by the Mississippi State Department of Health (Department) of an amended

application for a certificate of need (CON) to St. Dominic-Jackson Memorial Hospital (St. Dominic) for a facility to be located in Madison County, Mississippi. The main argument centers on whether St. Dominic[1] sought a "relocation" of licensed bed capacity from its Jackson location to a Madison County location or sought a "new" hospital.

¶3.    St. Dominic is a general acute care facility. The hospital had a licensed capacity of 571 beds which consisted of 453 medical/surgical beds, 35 chemical dependancy beds and 83 psychiatric beds. In June 2002, St. Dominic filed a CON application with the Department requesting approval for a new 100 bed hospital in Madison County. In September 2002, St. Dominic submitted an amended application to the Department. The amended application replaced the original application submitted in June 2002. This amended application sought to relocate 100 existing beds from its 571 licensed beds in Jackson to Madison County.

¶4.    Madison County Medical Center (MCMC) opposed St. Dominic's amended CON application and requested a public hearing on the matter. The Department granted St. Dominic's amended CON application. However, the Department only permitted 50 beds at the Madison facility instead of the 100 beds requested in St. Dominic's amended application. Following this ruling, MCMC appealed the Department's decision to the Chancery Court of Hinds County. In his opinion, dated May 27, 2004, Chancellor William Singletary, reversed the Department's grant of the 50 bed facility. Thereafter, the Honorable Stuart Robinson,

---

[1] The Department of Health joined the appellate brief and argument submitted by St. Dominic. It seeks that the decision of the chancellor be reversed and the Department's decision affirmed.

2

Chancellor, executed the final judgment reversing the Department's final order. Following this ruling, St. Dominic and the Department appealed to this Court.

**FACTS**

¶5.     In June 2002, St. Dominic filed a CON application with the Department, seeking to establish 100 new acute care beds in Madison County, which is part of the General Hospital Service Area 3 (GHSA-3) which includes Hinds, Madison and Rankin Counties. During this time, MCMC had filed an application with the Department seeking to move all 67 of its beds from Madison County to Hinds County. MCMC is the only hospital in Madison County and is located in Canton.

¶6.     The Department informed St. Dominic that until the application from MCMC was decided, St. Dominic's application would not be processed and would be held in abeyance. Thereafter, on August 1, 2002, St. Dominic asked that the original application be deferred. On September 3, 2002, St. Dominic submitted an amended application to the Department as a replacement for its original application. The amended application sought to relocate 100 licensed beds from the Jackson location to Madison County. Sometime during this process, the Department denied MCMC's request to move all of its beds from Madison County to Hinds County.

¶7.     MCMC challenged St. Dominic's amended application and requested a hearing before the Department. MCMC argued that there was no need to relocate beds because Madison County was over-bedded; the Canton hospital met the needs of the county; St. Dominic's

3

amended application sought to establish a new hospital; and the Department's denial of MCMC's request to move its beds from Madison County to Hinds County prohibited St. Dominic's amended application to relocate beds. According to MCMC, the only material difference in the original application and the amended application was that the amended application sought a relocation instead of a new hospital. MCMC also relied on testimony given by Harold Armstrong, the head of the Department's CON division, who testified that the only difference between the two applications was that one said "new hospital" and the other said "relocation." A portion of Armstrong's testimony follows:

Q.    With regard to everything else [other than the change from building a new hospital to an application for relocation], in terms of operating costs and the cost of the facility and the personnel and personnel costs, the original application [for new hospital] and the amendment [for a "relocation"] is identical basically, isn't it?

A.    Yes. Same size facility.

Q.    **Would you agree with me, Mr. Armstrong, that there really is no difference in these two applications for the cost of construction, the operation, there's no cost in this, the only difference being one application says a new hospital, and the other says relocation?**

A.    That is the basic difference.

Q.    **All right, sir. And, Mr. Armstrong, would you also agree with me in summary that there's no apparent reduction of any of the services currently being provided at the Hinds County or Jackson St. Dominic's facility after they move beds to Madison County?**

A.    **It wasn't stated in the application.**

4

Q. And in fact the application brings you to the conclusion that there doesn't appear that there is going to be any decrease in cost at the Hinds or Jackson facility, does it?

A. That's correct.

Further, the Department considered St. Dominic's changes as an amended application with a $500.00 fee instead of a new application with a $25,000.00 filing fee.

¶8. Following the hearing, the hearing officer recommended that St. Dominic's amended application be granted, allowing 50 rather than a 100 beds to be relocated to Madison County. The State Health Officer then accepted the hearing officer's recommendation and approved the amended application and granted the CON for 50 beds.

¶9. MCMC appealed the Department's approval of the CON to the Chancery Court of the First Judicial District of Hinds County. On May 27, 2004, Chancellor Singletary reversed the Department's grant of the CON. The chancellor found that the Department's findings were arbitrary and capricious and not supported by substantial evidence. From this ruling, St. Dominic and the Department filed an appeal to this Court raising the following issues:

I. **Whether the Mississippi Department of Health's determination that St. Dominic's Amended Application is for a relocation and not for a new hospital is supported by substantial evidence.**

II. **Whether the Department's finding that there is a need for additional acute care beds in Madison County, and that, as a result, St. Dominic's CON application satisfied the need requirement is supported by substantial evidence.**

5

**III.** **Whether the Department's finding that St. Dominic amended application substantially complied with the general goals of the State Health Plan is supported by substantial evidence.**

**IV.** **Whether the Department's finding that St. Dominic's amended application substantially complied with the General Review Criteria set forth in the CON Review Manual is supported by substantial evidence.**

## DISCUSSION

¶10. This Court concludes that the chancellor correctly found that ***St. Dominic-Jackson Mem'l Hosp. v. Mississippi State Dep't of Health***, 728 So. 2d 81, 83 (Miss. 1998), is applicable and controlling in this case. In keeping with the holding of the ***St. Dominic*** case, we find that the chancellor correctly ruled that the amended CON application sought a new hospital and not a relocation. The chancellor stated:

> MSDH and St. Dominic readily admit that if the "Criteria and Standards for the Establishment of a General Acute Care Hospital" were used, the Application would fail. Therefore, it would be futile for this Court to remand for further consideration of whether St. Dominic can show the appropriate standard of need for what the project actually is.

Since St. Dominic indicated that it could not meet the need requirement for a new hospital, the chancellor correctly ruled that remand of the case would be futile in light of St. Dominic's inability to meet the proper standard of need. Therefore, we find that the chancellor did not err in that finding, and this Court need only address Issue I, whether the amended application is a new hospital or a relocation.

6

¶11.    Certificates of need are required in certain circumstances pursuant to Miss. Code Ann. § 41-7-191(1) (Rev. 2005).[2]  This statute states, in part:

>    (1)    No person shall engage in any of the following activities without obtaining the required certificate of need:
>
>        (a)    The construction, development or other establishment of a new health care facility;
>
> * * *
>
>        (e)    The relocation of one or more health services from one physical facility or site to another physical facility or site . . . .

Miss. Code Ann. § 41-7-191(1).

¶12.    The standard of review for a final order of the State Health Department is controlled by Miss. Code Ann. § 41-7-201(2)(f) (Rev. 2001) which provides in pertinent part:

>    The order shall not be vacated or set aside, either in whole or in part, except for errors of law, unless the court finds that the order of the State Department of Health is not supported by substantial evidence, is contrary to the manifest weight of the evidence, is in excess of the statutory authority or jurisdiction of the State Department of Health, or violates any vested constitutional rights of any party involved in the appeal.

*See also* ***St. Dominic,*** 728 So. 2d at 83.  "The decision of the hearing officer and State Health Officer is afforded great deference upon judicial review by this Court, even though we review the decision of the chancellor." ***Miss. State Dep't of Health v. Natchez Cmty. Hosp.,*** 743 So. 2d 973, 976 (Miss. 1999); ***St. Dominic***, 728 So. 2d at 83.  The party challenging the

---

[2]  This last amendment to this statute was effective from June 30, 2001, well before June 3, 2002, when St. Dominic filed the original CON application.

agency action has the burden of proof. ***Pub. Employees' Ret. Sys. v. Marquez***, 774 So. 2d 421, 425 (Miss. 2000); ***His Way Homes, Inc. v. Miss. Gaming Comm'n***, 733 So. 2d 764, 767 (Miss. 1999).

### A.    The Chancery Court ruling.

¶13.    The chancery court found the ***St. Dominic*** case to be controlling law in this CON application. It found that the Department acted arbitrarily and capriciously pursuant to the standards set forth in ***St. Dominic***. Further, it found that the Department refused to use the State Health Plan's projection of need for what the project "actually is", in accordance with the ***St. Dominic*** case. The chancery court held in part:

> This Court has thoughtfully considered the ***St. Dominic*** case and finds it to be controlling law as to the matter at hand. The facts of these two cases are quite similar. As in ***St. Dominic***, a completely new building is proposed for construction in Madison County, in fact, the project contemplated in this case is contemplated to cost nine million dollars more that the project at issue in ***St. Dominic***. Further, this new building will be staffed with new medical workers and new equipment, rather than transferred employees and equipment from the Jackson facility. Also, there will be no corresponding decrease in services at the Jackson hospital. **Therefore, this Court can only find that the proposed St. Dominic hospital in Madison is, for all practical purposes, a new hospital**. St. Dominic has argued that there need be no factual distinction between the two cases, as MSDH is invested with the authority to apply the "relocation standard." **However, our Supreme Court has previously addressed this argument in its determination that "the showing of need must be commensurate to what the project actually is and the impact which it actually has on the Jackson health care market. *St. Dominic*, 728 So.2d at 89.**
>
> Appellees [St. Dominic and MSDH] make continual reference to the great deference due the Department and the presumption in favor of the Department's decision. This Court is well aware of these standards and does not deviate from them without much consideration. However, our Supreme

Court has also held that an agency's decision is arbitrary when it "is not done according to reason and judgment, but depending on the will alone," and capricious if "done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." **Ricks v. Mississippi State Dep't of Health**, 719 So.2d173, 177 (Miss. 1998). Taking into consideration the recent **St. Dominic** case, it is clear to this Court that the decision of MSDH in this case is arbitrary and capricious under these standards. **The facts in this case are almost identical and yet MSDH refuses to consider the current Application under the same criteria espoused by the Supreme Court in** *St. Dominic*. Pursuant to statute, the controlling question in every CON review is whether the project substantially complies with the Plan's projection of need, not any other lesser standard of need. **If MSDH strays from applying the Plan's projection of need, it commits legal error, and acts arbitrarily and capriciously. In the matter at hand, MSDH has refused to use the Plan's projection of need for what the project actually is.... Therefore, the Hearing Officer reaffirms the definition of "relocation" found "highly suspect" in the prior case and applies a standard that he terms "relocation criteria." However, there is no specific "relocation criteria" located in any part of the Plan or applicable statutes.**

(Emphasis added). The chancery court did not give any detailed analysis for the need criteria in its findings. It stated:

> MSDH and St. Dominic readily admit that if the "Criteria and Standards for the Establishment of a General Acute Care Hospital" were used, the Application would fail. Therefore, it would be futile for this Court to remand for further consideration of whether St. Dominic can show the appropriate standard of need for what the project actually is.

### B. *St. Dominic-Jackson Mem'l Hosp. v. Mississippi State Dep't of Health*

¶14. In *St. Dominic*, Methodist Medical Center (MMC) filed a CON application for a primary care center known as the "North Campus." *St. Dominic*, 728 So. 2d at 82. At the time of the CON application, MMC had 474 licenced beds and operated 280 of those beds. *Id*. at 84. MMC wanted to utilize 64 of the remaining 196 unused licensed beds for the North

9

Campus location. *Id*. The State Health Officer granted the CON and determined that the application was a "relocation" which was defined as "the moving of authority to provide a service from one location to another." *Id*. The CON was granted under this definition even though there was no reduction in services at MMC's main campus. *Id*.

¶15. This Court refrained from reversing the case on whether the definition of a 'relocation' was arbitrary or capricious. *St. Dominic*, 728 So. 2d at 85. Instead, this Court found that the MSDH was within its authority to interpret the meaning of the word "relocation." *Id*. at 84. However, this Court found that the real error that required reversal was that the MSDH applied a much reduced standard of need, the "any specific advantage" test. *Id*. at 85. This Court found that the need criteria "must be commensurate to what the project actually is and the impact which it actually has on the Jackson health care market." *Id*. at 89. Further, the Court held that **"[n]o lesser showing of need will be required by this Court based on the notion that a "relocation" has taken place."** *Id*. (emphasis added). Ultimately, this Court denied the CON application. *Id*. at 92.

### C. *Arguments*.

¶16. St. Dominic argues that its amended application was a plan to relocate 100 licensed acute care beds from Hinds County to Madison County. The Department also viewed the application as a relocation and applied the criteria from the 2003 State Health Plan which concern the replacement/relocation of a health care facility or portion thereof. The State

Health Officer then agreed with staff recommendations and permitted 50 acute care beds to be relocated to Madison County.

¶17. St. Dominic contends that this Court never held in the *St. Dominic* case that the term "relocation" was incorrectly defined. Rather, the case found that the State Health Officer used a lower standard of need for the relocation of the beds, and Methodist Medical Center never demonstrated any need to move beds from one part of Hinds County to another. However, St. Dominic argues that the definition of "relocation" was not altered by the *St. Dominic* opinion.

¶18. This Court refused to find that the term "relocation" was arbitrary or capricious, holding:

> The term "relocation" is not defined in the Health Plan nor in statute, and the Health Officer was within his authority in making his own interpretation of this term. This Court should not disturb this interpretation of the term absent a finding that this interpretation is arbitrary and capricious. This Court has held that the Department has the authority to define terms in a manner inconsistent with their generally accepted definition. *Mississippi State Dep't of Health v. Golden Triangle Reg'l Med. Ctr.*, 603 So. 2d 854, 857 (Miss. 1992).
>
> . . . .
>
> While this Court finds the Health Officer's definition of "relocation" to be suspect, we consider it unnecessary to determine whether this definition is arbitrary and capricious.

*St. Dominic*, 728 So. 2d at 84-85.

¶19. In addition, St. Dominic contends that the appropriate need analysis in this instance is for a **relocation** and **not** an analysis based upon a **new hospital**. Therefore, St. Dominic

11

contends that it neither ignored the need analysis nor applied a reduced standard of need for a relocation than is provided by the State Health Plan.

¶20.   St. Dominic also contends that the chancellor misapplied the *St. Dominic* holding to this case *because he substituted his judgment for that of the Department*. St. Dominic argues that the Department is the appropriate entity to define the terms, and that the definition was supported by more than a scintilla of evidence. St. Dominic argues that the Department's definition of relocation does not require the physical relocation of workers, equipment or services. St. Dominic also contends that the Department applied the same standard set forth in the 1998 *St. Dominic* case. St. Dominic contends that the two cases can be distinguished because Methodist made *no showing of an actual need for relocation* arguing that a lesser standard of review applied and *no show of need was required*. This Court held in the *St. Dominic* case that need was required and Methodist failed to show any need, which was fatal to the application. St. Dominic claims that here it demonstrated need.

¶21.   MCMC argues that St. Dominic's amended application is not a relocation application but a new hospital application. Therefore, MCMC maintains that the Department should have reviewed the application pursuant to the criteria and standards for new hospitals in counties with an existing hospital rather than as a relocation.

¶22.   MCMC argues that St. Dominic is in effect trying to evade the **need criteria** by labeling the proposed hospital as a relocation instead of a new hospital and applying a lower criterion of need from that which a new hospital must prove. Further, MCMC argues that

12

this Court held in the *St. Dominic* case **that need is determined on the basis of what the project "actually is" and not on its label.**

¶23.    This Court finds that the *St. Dominic* case is applicable.  St. Dominic claims that its case is distinguishable from that of MMC in the *St. Dominic* case.  We disagree.  The facts in both the cases concern an existing hospital's "relocation" of licensed but currently unused beds from one physical location to another.  MMC had a licensed capacity of 474 beds and operated 280 beds.  *St. Dominic*, 728 So. 2d at 84.  Of the 196 unused beds or non-operational beds, MMC wanted to "relocate" 64 beds to a proposed North Campus.  *Id*. Likewise here, St. Dominic has a licensed capacity of 571 beds and wanted to relocate 100 beds from Hinds County to Madison County.  The chancery court also correctly found that the facts in this case are similar to MMC's and that the *St. Dominic* case is controlling in this case.

¶24.    Here, the chancery court never determined that the MSDH definition of relocation was arbitrary and capricious. Rather, it stated that "St. Dominic and MSDH are correct in their argument that the Supreme Court did not determine this definition of relocation to be arbitrary or capricious."

¶25.    We reject St. Dominic's argument that the chancery court misapplied the *St. Dominic* holding because the chancellor allegedly redefined the term "relocation" instead of using the Department's definition.  The chancery court was merely applying the holding in the *St. Dominic* case to the facts and found that the proposed hospital was a new hospital rather than

13

a relocation. In addition, the chancery court found that this Court considered that the **showing of need had to be commensurate to what the project actually is.** The chancery court found that "MSDH has refused to use the Plan's projection of need for what the project actually is."

¶26. The chancery court correctly referenced that St. Dominic failed to consider this Court's holding that "the showing of need must be commensurate to **what the project actually is** and the impact which it actually has on the Jackson healthcare market." *St. Dominic*, 728 So. 2d at 89 (emphasis added). Here, the chancery court found that the project actually was a new hospital. The appropriate criteria applicable for a new hospital are the "Criteria and Standards for the Establishment of a General Acute Care Hospital."

¶27. In its ruling, the chancery court noted that St. Dominic admitted that it could not meet the standard for a new hospital, therefore, remand would be "futile."[3] We agree.

¶28. In addition, when reviewing this issue in the context of Miss. Code Ann. § 41-7-191(1), it is clear that St. Dominic's amended application proposed the construction of a new facility. Considering the plain language of the statute, the most reasonable interpretation of subsection (e) "[t]he relocation of one or more health services from one physical facility or site to another physical facility or site" is as follows: first, a "relocation" means the transfer of a health service. A health service, as defined in the *Certificate of Need Review Manual*,

---

[3] Also, the Hearing Officer noted that St. Dominic acknowledged that it could not meet the criteria of need for a new hospital.

14

is a diagnostic, treatment or rehabilitative service. Second, a "relocation" is not the transfer of a part of a health service – it is the transfer of an entire health service. Finally, the Health Department has defined "relocation" as "the moving of authority to provide a service from one location to another." A reasonable inference from this definition is that, after the authority to provide a service has been relocated, the transferring facility would no longer have the authority to provide the same service.

¶29. St. Dominic's amended application proposes the construction of a completely new building in Madison County, and the new building will be staffed with new medical workers and new equipment, rather than transferred employees and equipment from the Jackson facility. The Madison County facility will offer "surgery in four operating units; high-level imaging services; nursing care 24 hours per day, seven days per week; rehabilitation and physical therapy; pharmacy; clinical laboratories; and Level IV emergency services." There is nothing in the record that suggests that St. Dominic-Jackson will not continue to provide the same services. It is therefore logical to conclude that St. Dominic's amended application does not involve "the moving of authority to provide a service from one location to another."

¶30. Clearly, St. Dominic's amended application should have been considered under the State Health Plan's "Certificate of Need Criteria and Standards for the Establishment of a General Acute Care Hospital" instead of its "Certificate of Need Criteria and Standards for Construction, Renovation, Expansion, Capital Improvements, Replacement of Health Care Facilities, and Addition of Hospital Beds." St. Dominic proposed to relocate beds from its

15

Jackson location to a new Madison County location. But none of the Jackson location's health services would be relocated to the new Madison County location. New health services would be established at the new facility. New staff would be hired and new equipment purchased to implement the provision of the new health services. "In this context, we would question a proposal which sought to build what is, for all practical purposes, a new hospital . . . under the guise of a 'relocation.'" *St. Dominic*, 728 So. 2d at 89.

¶31.    Accordingly, we find that the chancery court did not err by reversing the final order of the MSHD and denying the CON.

### CONCLUSION

¶32.    The *St. Dominic* case is controlling in this case. There we held that this Court must consider the appropriate standard of need based upon what the project "actually is." The chancery court correctly applied the *St. Dominic* case to this case and ruled that the application was for a new hospital, not a relocation. Further, we find that the chancery court correctly found that in light of St. Dominic's inability to meet the standards of need for a new hospital as opposed to a relocation, there is no need to remand the case for further review. Therefore, the chancery court did not err by denying the CON application and reversing the MSDH grant of the application. For these reasons, we affirm the chancellor's judgment.

¶33.    **AFFIRMED.**

    **SMITH, C.J., WALLER AND COBB, P.JJ., CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., DISSENTS WITH SEPARATE WRITTEN OPINION. DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**

16

**GRAVES, JUSTICE, DISSENTING:**

¶34. The majority bases its opinion on this Court's prior decision in *St. Dominic-Jackson Mem'l Hosp. v. Miss. State Dep't of Health*, 728 So. 2d 81 (Miss. 1998). Because I believe that case was wrongly decided, I also believe it would be in error for this Court to dispose of the instant case by relying on its prior opinion in *St. Dominic-Jackson*. Therefore, I respectfully dissent.

¶35. The dissents of Justices Roberts and Banks in *St. Dominic-Jackson* more accurately reflect the deference an administrative body such as the Mississippi State Department of Health (MSDH) should be given regarding its decision to grant or deny a Certificate of Need (CON). *Id.* at 93-104 (Roberts. J. dissenting), 104 (Banks, J., dissenting to denial of rehearings). Justice Roberts' admonition that "the MSDH's definition *and application of that respective definition* to this case should not be disturbed as it does not appear arbitrary and capricious even though it may not comply with its generally accepted definition" is apropos not only to *St. Dominic-Jackson* but also the instant case *Id.* at 98 (Roberts, J., dissenting) (emphasis added). Today the majority, just as in *St. Dominic-Jackson*, strips the Department of Health of its legislatively granted power to define "relocation." The majority also inhibits the Department's ability to evaluate St. Dominic's application for a certificate of need according to its own criteria, specifically the "Criteria and Standards for Construction, Renovation, Expansion, Capital Improvements, Replacement of Health Care Facilities and Addition of Hospital Beds (relocation)," by mandating that this proposed

17

hospital relocation be evaluated as a "new" hospital.   As Justice Roberts stated in *St. Dominic-Jackson*, "[i]t is not for this Court to substitute its opinion for the opinion of the Board [MSDH] where the Board [MSDH] has reached its decision on conflicting evidence and where its conclusions are supported by substantial evidence." *Id*. at 97 (Roberts, J., dissenting) (quoting *Ohio Oil Co. v. Porter*, 225 Miss. 55, 60, 82 So. 2d 636, 638 (1955)). I would defer to the Health Department's decision to grant St. Dominic's application for a Certificate of Need, reverse the chancellor's judgment and reinstate the Department's decision.

¶36.   For these reasons, I respectfully dissent.