¶ 44. I dissent from the majority opinion herein. I believe that Sandefer's second issue is meritorious and would therefore reverse and render the conviction of burglary. Sandefer states his second issue as:
 WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GRANT MR. SANDEFER'S MOTION FOR A DIRECTED VERDICT AND SUBSEQUENT
 MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR A NEW TRIAL BASED ON THE ABSENCE OF ANY PROOF THAT MR. SANDEFER WAS UNLAWFULLY IN DR. TAYLOR'S HOME.
 FACTS ¶ 45. In 2003, Dr. Roma Taylor lived and worked in Orange Beach, Alabama. Taylor also owned a house in Lee County, just south of Tupelo, where her son, Dustin Wesson, and her ex-husband, Dr. Tom Wesson, lived. Nicole Vinson, Sandefer's sister, was Dustin's long-time girlfriend. Vinson and Sandefer were frequent and welcome guests at Taylor's house.
 ¶ 46. The basement of Taylor's Lee County house contained a "safe room" in which Taylor kept some valuable items, including old deeds, old money, coins, photos, art, and her late grandfather's ring. Taylor last saw the valuables in the strong room during an April 20, 2003, visit. When Taylor returned to the Lee County house on July 4, 2003, she discovered that some of her valuables were missing, specifically $6,000 in cash that had belonged to her grandmother. Taylor described the currency as ten-, twenty-, and one-hundred-dollar bills from the 1930s through the 1950s.
 ¶ 47. On May 1, 2003, Sandefer and his friend, Jay West, were being chauffeured around Saltillo in a limousine. They stopped at Dixon's Travel Center in order for Sandefer to purchase a cell phone charger. Sandefer asked a clerk at Dixon's to exchange $600 in twenty-dollar bills for one-hundred dollar bills. After receiving the one-hundred dollar bills, Sandefer and West left the store. Another Dixon's employee noticed that the twenty-dollar *Page 297 
bills did not look like modern currency, suspected that they were counterfeit, and called the Saltillo Police Department. A police officer picked up the money and took it to the police department to make photocopies. The money was then taken to a Local bank, where bank employees determined that the money was authentic currency from the 1950s. The money was then returned to Dixon's.
 ¶ 48. Sandefer and Vinson were indicted on October 19, 2004, for the burglary of Taylor's home. Their trial commenced on May 9, 2005. West and Mark Gillespie, a former friend of Sandefer's, both testified that Sandefer admitted to them that he stole money from Taylor's house. At the close of the State's case, Sandefer and Vinson's attorneys moved for a directed verdict. Vinson's attorney argued that the State had put forth no evidence that Vinson was involved in any way with the burglary. Sandefer's attorney argued that the indictment was defective insofar as it charged Sandefer with burglary under Mississippi Code Annotated Section 97-17-23 rather than Mississippi Code Annotated Section 97-17-29. He contended that under Section 97-17-23, the State was required to prove that Sandefer was in the house illegally. He reasoned that the State failed to prove that element of the crime because the State's own witnesses stated that Sandefer was always a welcome guest in the Taylor's home. Sandefer's attorney also argued a lack of sufficient evidence, stating that the State failed to prove that Sandefer was ever in the room or that he was ever in possession of the entire $6,000. The court granted a directed verdict in favor of Vinson and denied a directed verdict for Sandefer.
 ¶ 49. After the State rested its case, Sandefer's attorney moved for a directed verdict. He argued that the indictment, which charged Sandefer with burglary of a dwelling under Mississippi Code Annotated Section 97-17-23,[6] was defective. Sandefer's attorney contended that because the State's evidence proved unequivocally that Sandefer was always a welcome guest in the Wesson's home that the State improperly indicted Sandefer under Section 97-17-23. Based upon the evidence, Sandefer could only be convicted, if at all, under Mississippi Code Annotated Section 97-17-29, titled "Burglary; breaking inner door of dwelling by one lawfully in house." Sandefer's attorney argued that the elements of proof under the two statutes differed and that the State had charged Sandefer improperly.
 ¶ 50. The trial court held that had Sandefer been charged under Mississippi Code Annotated Section 97-17-29, the State would have been required to prove Sandefer's lawful presence on the property as an element of the crime. The trial court did not comment, however, as to whether an indictment under Mississippi Code Annotated Section 97-12-23 required proof of Sandefer's unlawful presence on the property as an element of the crime. The trial court simply concluded that Mississippi Code Annotated Section 97-17-23 *Page 298 
was the proper statute under which to charge Sandefer and that the indictment was not defective. The trial court then denied the motion for a directed verdict.
 ¶ 51. Following the jury's guilty verdict, Sandefer's attorney submitted a motion for judgment notwithstanding the verdict and/or a motion for a new trial. Among the arguments set forth in that motion were the following: lack of sufficient evidence, a defective indictment, and refusal of a jury instruction on the elements set forth in Mississippi Code Annotated 97-17-29. The trial court issued a brief, perfunctory opinion denying Sandefer's motion.
 ¶ 52. The standard of review for the denial of a motion for judgment notwithstanding the verdict and a motion for directed verdict are identical. Miss. Transp. Comm'n v. Ronald AdamsContractor, Inc., 753 So.2d 1077, 1083 (¶ 6) (Miss. 2000) (citation omitted). In reviewing such motions, "this Court will consider the evidence in the light most favorable to the appellee, giving the appellee the benefit of all favorable inferences that may be reasonably drawn from the evidence."General Motors Acceptance Corp. v. Baymon,732 So.2d 262, 268 (¶ 17) (Miss. 1999) (citation omitted).
 If the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render. On the other hand, if substantial evidence exists in support of the verdict, that is, `evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions,' then this Court must affirm
Harrah's Vicksburg Corp. v. Pennebaker, 812 So.2d 163,170 (¶ 28) (Miss. 2001) (citation omitted).
 ¶ 53. On appeal, Sandefer argues in his second point of error that the trial court committed reversible error in denying his motion for a directed verdict and his motion for judgment notwithstanding the verdict because the uncontroverted evidence failed to prove that Sandefer was ever unlawfully in the Wesson's home. Without evidence of an unlawful breaking and entering, Sandefer argues, he could not be convicted of burglary under Mississippi Code Annotated Section 97-17-23.
 ¶ 54. That argument raises two questions for this Court: First, is proving lack of consent necessary to meet the element of breaking and entering as stated in Mississippi Code Annotated Section 97-17-23? If so, did the judge err in denying the motion for directed verdict and/or the motion for judgment notwithstanding the verdict based upon the evidence before the court with regard to Sandefer's permission to be on the property?
 A. Lack of consent as an element of burglary under Mississippi Code Annotated Section 97-17-23
 ¶ 55. Sandefer was charged with burglary of a dwelling, with the underlying crime being larceny, pursuant to Mississippi Code Annotated Section 97-17-23. This section states as follows:
 § 97-17-23. Burglary; breaking and entering inhabited dwelling.
 Every person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by imprisonment in the Penitentiary not less than three (3) *Page 299 
years nor more than twenty-five (25) years.
Miss. Code Ann. § 97-17-23 (Rev. 2000). While the statute itself does not explicitly require that the State prove a lack of consent as an element of the burglary, case law interpreting this burglary statute does require such proof.
 ¶ 56. Burglary of a dwelling requires the State to prove two elements: (1) an unlawful breaking and entering of a dwelling house or inner door therein and (2) an intent to commit a crime once entry has been obtained. See Alford v.State, 656 So.2d 1186, 1192 (Miss. 1995) (emphasis added).See also Ashley v. State, 538 So.2d 1181, 1183
(Miss. 1989) (stating that Ashley did not have permission from the owner to enter the home). Other cases refer to the first element, breaking and entering, as a "burglarious
breaking and entering." See generally State v.Berryhill, 703 So.2d 250, 253 (Miss. 1997) (emphasis added). In fact, the indictment itself also refers to a willful, felonious and burglarious breaking and entering.
 ¶ 57. In Holderfield v. State, 215 Miss. 564,61 So.2d 385 (1952), the Mississippi Supreme Court held that proving lack of consent to enter the premises is necessary to a conviction for burglary of a business. Holderfield was charged under Section 2043, Code of 1942, which reads as follows:
 Every person who shall be convicted of breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building or private room or office therein, ship, steamboat, flatboat, or railroad car, in which any goods, merchandise, or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony, or who shall be convicted of breaking and entering, in the day or night time, any building within the curtilage of a dwelling house, not joined to, immediately connected with, or forming a part thereof, shall be guilty of burglary, and imprisoned in the penitentiary not more than seven years.
Mississippi Code Annotated § 2043 (1942).[7]
 ¶ 58. Following a jury trial, Holderfield was convicted of burglarizing his former place of employment by entering the building through a window and taking money from the cigarette machine and jukebox. Id. at 385. Holderfield's former employer gave conflicting testimony regarding whether Holderfield had permission to be on the property. The trial court instructed the jury that it would be required to convict Holderfield of burglary if it believed he broke into the building with the felonious intent to steal, "even though you believe that the defendant Leon Holderfield had permission to enter the building. . . ." Id. at 386.
 ¶ 59. The Mississippi Supreme Court reversed the conviction. In so doing, the court stated that a burglary conviction required "two essential elements, viz: (1) The burglarious breaking and entering of the house, and (2) the felonious intent to commit some crime therein." Id.
(citations omitted). The court further held that it is not merely the breaking and entering that constitutes the heart of the crime, but it is "the criminal breaking without theconsent of the owner, for the purpose of taking property stored in the building that constituted the corpus delicti."Id. (emphasis in original). Finally, the court held that *Page 300 
"[t]he fact that one who enters with the consent of the owner commits a larceny after the entry does not make him guilty of a burglary." Id. (citation omitted).[8]
 ¶ 60. While Holderfield addressed burglary of a business under what is now Mississippi Code Annotated Section 97-17-33(1) and not burglary of a dwelling under Mississippi Code Annotated Section 97-17-23, the Mississippi Supreme Court has applied the Holderfield principles equally to burglary of a dwelling. In Mason v. State,344 So.2d 144, 145 (Miss. 1977), the defendant was convicted of burglary[9] and malicious mischief for breaking into her in-law's home and pouring acid over their belongings. On appeal, Mason argued that she was not guilty of burglary because she had her in-law's permission to enter the home. ApplyingHolderfield, the court held that "there can be no breaking and entering, and therefore, no burglary, where the occupant of a building consents to the entry at the time the offense is committed." Id. at 146. The court upheld the conviction, however, because although Mason would have been entitled to a jury instruction on the issue of implied consent to enter the dwelling, she did not request one at the trial level. Id.
 ¶ 61. Both this Court and the Mississippi Supreme Court have reiterated and relied on Holderfield's principle that lack of consent is necessary to prove a breaking under Mississippi's burglary statutes. In Mitchell v. State,720 So.2d 492, 494 (¶ 9) (Miss.Ct.App. 1998), this Court overturned Mitchell's burglary conviction after a jury found him guilty of breaking into his own home. This Court relied onHolderfield, stating that as a resident of the home, Mitchell could not be guilty of burglary because he had permission, as a resident and owner, to be in the home.Id. Additionally, the Mississippi Supreme court held inDavis v. State, 611 So.2d 906, 911 (Miss. 1992), that while consent to enter negates the possibility of a conviction for burglary, a co-owner could not consent to have a third party enter the property for the sole purpose of committing a crime. Accordingly, consistent with prior precedent, I would hold that proving lack of consent is necessary in proving the element of breaking and entering under Mississippi Code Annotated Section 97-17-23.
 ¶ 62. The majority references no law from this State which supports its opinion on the issue of consent. Given the care with which the majority has constructed this opinion, one can only presume that the failure to cite to the law of Mississippi on this issue is because there exists no law in this State which supports the position taken by the majority.
 ¶ 63. The majority seeks to divert attention from this failure by the use of footnote 2, which, at best, is merely a parenthetical reference to the case and statutory laws of California and Wisconsin. However, a reading of the majority's own parenthetical reference indicates that it does not support the position for which the *Page 301 
majority references it. The cases referenced by the majority do not address the issue of consent as an element of burglary. Instead, they address the issue of entry into an inner door. It should be noted that the Wisconsin statute specifically makes lack of consent an element of the offense of burglary.[10]
 ¶ 64. Failing to find support for its position in this State's case law, the majority makes a feeble effort to dismiss the dissent by saying, "What the dissent fails to recognize is that Sandefer did not have permission to be in the safe room, and Dr. Taylor had not consented for him to enter that room, as her testimony made clear." The fallacy in such a carefully crafted statement is that it omits the fact that Sandefer and his sister were at the home as guests of Dr. Taylor's son and agent, Dustin, who lived there. The testimony regarding these visits was that Sandefer often visited with his sister, Nicole, who was Dustin's girlfriend. While Dr. Taylor testified that Sandefer did not have her permission to be in the safe room, there is no testimony that Dustin, as Dr. Taylor's agent, did not permit Sandefer to enter the safe room.
 ¶ 65. The core question in this issue is whether lack of consent is an element of burglary. While the majority has chosen to ignore the law of this State, as announced by our courts, that does not change the law. The plain and simple fact is that lack of consent is an element of burglary. Because of that fact, I believe that this Court is required to reverse and render this conviction.
B. Sufficiency of the evidence
 ¶ 66. While it is a secondary consideration, I also find the majority's treatment of issue 6, the sufficiency of the evidence, to be highly questionable. The majority states without equivocation that, "[g]iven all of the evidence in this case, both circumstantial and direct, a reasonable jury could have found all the elements of the crime of burglary beyond a reasonable doubt. Therefore, the evidence is sufficient to sustain Sandefer's conviction, and this contention is without merit." Having made that bold statement, the majority then immediately proceeds to reverse and remand this case for a new trial on the grounds that the trial court erred in excluding the testimony of Tracy Allen. Such an action would appear to be illogical and futile. Unlike the movie "Animal House," the law does not require a futile gesture. See St. Dominic-MadisonCounty Med. Ctr. v. Madison County Med. Ctr., 928 So.2d 822
(Miss. 2006) (holding that a chancellor reviewing the decision of a state agency properly reversed and rendered where, once the legal standard to be applied properly had been established, remanding the case would be futile, given St. Dominic's admission that it could not meet that legal standard). At worst, such a bold statement regarding the sufficiency of the evidence would merely require than any issues on appeal found to have merit be considered harmless error. See Carraway v.State, 562 So.2d 1199, 1203-1205 (Miss. 1990) (citingHall v. State, 546 So.2d 673 (Miss. 1989); Porter v.State, 551 So.2d 104 (Miss. 1989)) (holding in all cases that where the evidence of guilt was sufficient, any error in the exclusion of last-minute *Page 302 
evidence and testimony was harmless error).
 C. Error in denying Sandefer's motion for a directed verdict and/or motion for judgment notwithstanding the verdict
 ¶ 67. After reviewing the record, I find that the testimony and the evidence of the State's own witnesses unequivocally established that Sandefer was always a welcome guest in Taylor's house. Nothing in the State's evidence indicates that Sandefer was ever in Taylor's house without permission, even when this Court examines that evidence in the light most favorable to the State, as required under the applicable standard of review.See Ronald Adams Contractor, Inc.,753 So.2d at 1083 (¶ 16); Harrah's, 812 So.2d at 170 (¶ 28);General Motors Acceptance Corp. 732 So.2d at 268 (¶ 17). With no evidence of lack of consent to enter the home before the court, the trial court should have granted Sandefer's motion for a directed verdict. Alternatively, following the jury's guilty verdict, the trial court should have granted Sandefer's motion for judgment notwithstanding the verdict, on the grounds that there was insufficient evidence to support the verdict.
 ¶ 68. Under the applicable standard of review, "[i]f the facts are so overwhelmingly in favor of the appellant that a reasonable juror could not have arrived at a contrary verdict, this Court must reverse and render." Harrah's,812 So.2d at 170 (¶ 28). The State's own evidence unequivocally proved that Sandefer had permission to be on the property. There is no evidence to support the jury's verdict with regard to the element of breaking and entering, nor was there any evidence that would have permitted the trial court to submit the question to the jury. Accordingly, I believe that this Court should reverse and render.
[6] The indictment did not reference Mississippi Code Annotated Section 97-17-23, titled "Burglary; breaking and entering inhabited dwelling," specifically. Instead, the indictment stated as follows: "Randy Lloyd Sandefer did wilfully, feloniously, and burglariously break and enter an inner door of a certain dwelling owned and occupied by Dr. Roma Taylor Wesson and Dr. Matt Wesson (later amended to state `Dr. Tom Wesson' to conform to the evidence) with the felonious and burglarious intent to take, steal and carry away the good, chattels and personal property of the said Dr. Roma Taylor Wesson and Dr. Matt Wesson. . . ." At trial, however, both parties and the trial court agreed that the indictment referenced Section 97-17-23. This Court also agrees that the indictment refers to Section 97-17-23.
[7] Section 2043, Code of 1942 addressed burglary of a business. That language is now contained in Mississippi Code Annotated Section 97-17-33(1), which contains substantially the same language. See Miss. Code Ann, § 97-17-33(1). Accordingly, the principles that the Mississippi Supreme Court applied in Holderfield for Section 2043, Code of 1942 are applicable to Mississippi Code Annotated Section 97-17-33(1).
[8] Ultimately, the court's reason for reversing and remanding the conviction was due to the conflicting and irreconcilable jury instructions on the issue of Holderfield's consent to enter the building, rendering it impossible for the court to determine whether the jury based its verdict on the proper jury instruction.
[9] Mason was indicted and convicted under Mississippi Code Annotated Section 97-17-19, entitled "Burglary; breaking and entering dwelling." In 1996, the Mississippi legislature repealed Mississippi Code Annotated Sections 97-17-19, 97-17-21, and 97-17-27, all of which criminalized burglary of a dwelling, and combined them into what is now Mississippi Code Annotated Section 97 — 17-23. See Terry v. State,755 So.2d 41, 43 (¶ 6) (Miss.Ct.App. 1999). Accordingly, a conviction under97-17-19 is equivalent to a conviction under 97-17-23.
[10] The Wisconsin burglary statute referenced in Statev. Curtis, 144 Wis.2d 691, 424 N.W.2d 719 (Ct.App. 1998), the case cited in the majority's opinion, states in pertinent as follows: "Whoever intentionally enters any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony in such place is guilty of a class F felony: (a) Any building or dwelling; or . . . (f) A room within any of the above." Wis. Stat. § 943.10(lm) (2006).